Moncure, P.,
delivered the opinion of the court. After stating the case, he proceeded :
The first question which arises in this case, is, whether a court of equity has jurisdiction to afford relief in such a case, and whether the proper remedy of the plaintiff, if he be entitled to any, be not an action at law for damages. But as a decision that the plaintiff is entitled to no remedy at all, either at law or in equity, would put an end to all further controversy on the subject of the suit, we will proceed at once to consider the case on its merits.
The appellees contend that though “ Friend’s warehouse” was one of the places named in section 1, of chapter 87 of the Code, as the places at which it was thereby declared that the inspection and storage of unmanufactured crop tobacco, whether stemmed or unstemmed, should be continued; yet as that section was repealed by section 4, of the act passed April 29,1867, (acts of Assembly 1866-67, p. 967,) the said warehouse cannot properly be regarded as having been, since the 29th of April 1867, a place established by law for the inspection and storage of unmanufactured crop tobacco. But as the said warehouse has been so treated by them,' and so considered by others, since that day; and as they contend that, supposing the said warehouse to have continued after that day to be a place for the inspection and storage of tobacco, as aforesaid, they closed it for that purpose on the first day of October 1872, as they had a right to do, in the mode prescribed by section 2 of the said act of the 29th of April 1867. ¥e will, therefore, assume, for the purposes of this case, that prior to the said first day of October 1872 the said warehouse toas ’ *190 a place established by law for the inspection and storage : of tobacco as aforesaid, and proceed to enquire whether ■ it ceased to be so on and after that day, as contended by the appellees.
The first proviso of section 2, of the said act of the 29th of April, 1867, under which this question arises, is in these words: “ Provided that the owner or owners of warehouses established by law shall have the right to close his or their warehouses at pleasure, after giving to the owner, or his agent, of each hogshead stored therein, sixty days’ notice of such intention; or after publishing such intentiou for four weeks in some newspaper published in the city or county in which such warehouse is established.”
The owners in this case did publish such intention for four weeks, in a newspaper published in the city of Lynchburg, in which the said warehouse is situated. But it is contended by the appellant,- 1st: That the right of the owners to close their warehouse as a place for the inspection and storage of tobacco, is subordinate to the right of the appellant to be an inspector at the said warehouse for the whole year for which he was appointed as such, and to his right of possession as a lessee thereof during that year; and 2dly, that the said notice of the owners, and - what was done by them in pursuance thereof, were not bona fide acts, but acts done in fraud of the law, and in fraud of the rights of the appellant as inspector and lessee as aforesaid. Let us proceed to consider these two positions in the order above stated: And,
1st: As to the right of the appellant to be inspector at the said warehouse, and to the possession thereof, as a co-lessee, for the whole year of 1872—notwithstanding any act which might have been done by the owners to close the said warehouse on the 1st day of October 1872—- *191 and though such act may have heen in strict pursuance of the said second setion of the act of April 29, 1867.
Certainly,section 9 of that act does provide that “the Governor shall annually, in the month of August or September, or as soon thereafer as practicable, appoint one inspector of tobacco for each warehouse established by law in any county or eoporation,” &c.; and section 11 does provide that “ the terms of office of said inspectors shall commence on the first of January next succeeding such appointment, and continue for one year, and until their successors are qualified;” and see. 3 of chap. 87 of the Code, (which still remains in force,) does provide that “ the proprietors of any such warehouse for the inspection of tobacco, shall let the same to the inspectors, at the rent fixed by law.” All of which would seem to indicate an intention on the part of the Legislature that inspectors of tobacco should hold their offices for at least a year; that is, from the first of January to the 31st of December inclusive, and should, during that period, be lessees of the warehouses at which they are inspectors. And such, indeed, is generally the case; but not always. ¥e must remember that the office of tobacco inspector is instituted for the public good, and not for the individual benefit of the officer. And we must construe the whole law together, and not the different sections separately. If we look at the 2d section of the act of April 29,1867, we will find the language just as plain as that of the three sections just before referred to; and it expressly provides, “ that the owner or owners of warehouses established by law, shall have the right to close his or their warehouses at pleasure, after giving” notice as therein mentioned. It is not here provided that the inspector at such a warehouse shall continue to hold his office and the possession of the warehouse until the end of the year; nor that the closing of the warehouse shall *192 not take effect until the end of the year; hut it is simply declared that the owner shall have the right to close it “at pleasureof course without any limitation or restriction as to time, except what is made necessary by the notice which is required to be given. Construing, then, all these sections together, the obvious meaning is, that while, generally, an inspector is appointed for a year, and holds his office and possession of the warehouse, as lessee, for a year, yet his right is subject to the condition, that the warehouse be not closed by the owner during the year, in pursuance of the 2d section of the said act of April 29, 1967; in which case, his term of office and his right of possession of the warehouse then immediately expire. His right of possession as lessee is a mere incident to his office, and of course expires with it. When, therefore, the Legislature engrafted on the inspection law of the State the 2d section of the act of April 29, 1867, the effect was to make section 11 of chapter 87 of the Code read thus : “ The terms of office of said inspectors shall commence on the first day of January next succeeding such appointment, and continue for one year, and until their successors are qualified; unless the warehouse be sooner closed by the owner, in pursuance of section 2 of the act of April 29,1867; imohich ease the term of office of the inspector shall then immediately expire.” Since the passage of that act, inspectors of tobacco have accepted their offices subject to the proviso contained in the 2d section as aforesaid.
We are, therefore, of opinion that the appellees had a right to close their warehouse on the first day of Ocber 1872, in the mode prescribed by the said 2d section of the said act; and that if they did so close it, the appellant then immediately ceased to be inspector at the said warehouse, or to have any right of possession *193 • thereof, either as lessee or otherwise. And now we have only to enquire:
2dly: As to the said notice of the owners, and what was done by them in pursuance thereof; whether they were bona fide acts; or, on the contrary, acts done in fraud of the law, and in fraud of the rights of the appellant as inspector and lessee as aforesaid.
It is not pretended that the notice of the intention of the owners to close their warehouse in this case was not in due form. It is short, but full enough, and directly to the point; and is certainly all sufficient. It is addressed “to whom it may concern,” and runs thus: “ Take notice, that the undersigned, owners of Friend’s warehouse in the city of Lynchburg, intend, upon Tuesday the first day of October, 1872, to close said warehouse as a place established by law for the inspection and storage of unmanufactured crop tobacco. This notice is given in accordance with the second section of an act of the General Assembly, passed April 29th, 1872.” It would be impossible to add to, subtract from, or change a word in that notice, to advantage. And. if it had stood alone, there would certainly have been nothing in it to which the least objection could be made.
But the said notice was accompanied by another, which was addressed “ To the Public,” and runs thus: “ The foregoing notice is given in accordance with the • Act of Assembly, to enable ns to change our warehouse from one established by law to a private warehouse, which will be under our exclusive control, and for the proper conduct of which we will be responsible. A similar change has been made in all the warehouses in ■ Danville, and has given great satisfaction; and the change we propose, will, we believe, be beneficial to ourselves and our customers. "We have, therefore, determined, on and after the first of October 1872, to close *194 our. public warehouse, and open the same as a private warehouse, for receiving, storing, selling, weighing and tobacco. All the commission merchants will sell at this warehouse. Breaks will be held as heretofore, under the supervision of Mr. Powhatan E. Haynes .and Mr. Robert L. Dudley, who will have charge of this warehouse for the owners, and will attend to receiving, storing, opening, weighing and delivering the tobacco' of our customers.” Signed “ Proprietors of Eriend’s "Warehouse.”
This latter notice, the appellant contends, shows that the owners of this warehouse intended, not bona fide, to close it as a public warehouse established by law, but only to pretend to close it as such, while they would continue to carry it on, in effect, as it had been carried on before. And this, he contends, is in fraud of the law, and of his rights as inspector and lessee as aforesaid, ■ and makes the pretended closing of the said warehouse null and void.
How, whether this be a sound argument or not, depends upon whether the owners of-this warehouse, after the first day of October 1872 intended to use it in any way in which only a 'public warehouse established by law could be used; or intended to use it only in Away in which a private warehouse could lawfully be used. It is hot pretended that they intended to use it "after that day as a place for the inspection of tobacco. There is nothing in the notice to warrant the inference .of: such "an intention; and they expressly declare in their answer that they had no such intention. In fact, they could not so use it, unless it were a place established by "law for the inspection and storage of unmanufactured crop tobacco ; for at ho other place can there be an inspector. Then, the question is, whether the use "which"-they pro- ■ posed to make of them warehouse, ■ after the 1st of Oc *195 tober 1872, was such a use as might lawfully be made of a private warehouse ?
They proposed, on and after that day, to close their public ■warehouse, and open the same as a private warehouse, for receiving, storing, selling, weighing and delivering tobacco. They further stated, in their notice to the public, that “all the commission merchants will sell at this warehouse. Breaks will be held as heretofore, under the supervision of Mr. P. E. Ii. and Mr. B. L D., who will have charge of this -warehouse for the owners; and will attend to receiving, storing, opening, weighing and delivering the tobacco of our customers.” Where is the law which prohibits any one of these acts ?—which prohibits the owner of a private warehouse from making such a use of it?—which prohibits the producers of tobacco from bringing it to a private warehouse, for such pui’poses?—for the purpose of being received, stored, opened, weighed, sold and delivered? We know of no such law. That law ought to be plainly written, (if it would be valid at all,) which would prohibit an owner of property from using it to the best advantage to himself, consistently with the rights of others and the public welfare. The only law which now exists, requiring an inspection of tobacco, is section 62 of chapter 87 of the Code, page 458, which declares that .“Bo unmanufactured tobacco, whether stemmed or unstemmed, shall be exported, or put on board of any vessel or boat for that purpose, unless the same be packed in hogsheads or casks, aud unless it shall have been inspected and marked or branded by inspectors of tobacco, in the manner prescribed by law. If any person shall ship or export any tobacco, contrary to this section, he shall forfeit one dollar for every pound of tobacco so shipped or exported. And the commanding officer of any such vessel or boat on which any such tobacco is *196 forfeit §20 for every hundred weight of such tobacco, and a proportionate sum for a less quantity.” Tobacco may be sold and consumed in the State; and any other use may lawfully be made of it, without having it inspected, except to export it, if it be unmanufactured tobacco. Tobacco may be manufactured without being inspected; and when manufactured, it may be exported without being inspected. The only necessary purpose of a tobacco inspection now, seems to be to pre- . pare unmanufactured tobacco for exportation. Andas many other uses are now made of tobacco, it is not gen- . erally found necessary to have it inspected. If it should be desired by any of the owners of tobacco which may be carried to, and manipulated at, Friend’s warehouse, according to the invitation contained in the notice to the .public aforesaid, to export such tobacco, they will of . course have, first, to carry it to a public warehouse and cause it to be inspected. But they may make any use of it they please, without having it inspected, except to . export it in its unmanufactured state.
If the owners of Friend’s warehouse, after closing it as a public warehouse in the mode prescribed by law, had on some future day opened it as a private warehouse, or had at some other place opened a private warehouse, it is presumed that no person could have questioned the lawfulness of such act. Can it make any difference that at the same time and place of closing their public warehouse they opened a private warehouse? We think not.
There is much less occasion for inspections of tobacco now than there formerly was. Tobacco was at one time, and for a long time, by far the most important staple of the country. It was long used as the currency of the country, in which public and private debts were contracted and paid. There is no subject upon which there *197 has been more legislation in the colony and the State of Virginia than the subject of tobacco. It is curious to trace the course of this legislation through all the volumes of Henning’s Statutes at large and the various revisáis of our statute law. A reference to most of them may be found in a note to ch. 220, 2 R. C. 1819, p. 134, being an act passed March 6, 1819, entitled “An Act to reduce into one the several acts now in force concerning the inspection of tobacco.” The statute law on the subject has been gradually diminishing in extent for a great many years past, though many provisions, no doubt, were long retained after they ceased to be of practical importance. The chapter on the subject, in the Code of 1819, being ch. 220, is a very long one, extending from p. 134 to p. 176 of the 2d vol. The public warehouses enumerated in the 2d section of that act are very numerous. The chapter on the same subject in the present Code, being ch. 87, is not near so long; and there are comparatively few public warehouses for “ the inspection and storage of unmanufactured crop tobacco” enumerated in it. The act of April 29,1867, before referred to, amends many of the sections of ch. 87 of the Code, repeals many others, and makes many radical changes in the tobacco inspection law. ■ Among'the sections repealed, are sec. 1, continuing the public warehouses enumerated therein; and section 55, declaring the State responsible for the indemnity of the owner of any tobacco received in any warehouse for inspection and damaged therein by fire within a year from the date of its being so received. And among the other radical changes made by the said act, is that made by section 2, which contains the proviso aforesaid, giving to owners of warehouses establishsd by laiv a right to close them at pleasure. To be sure, that same section declares “ that the justices of- any county or corporation, all the *198 justices having been summoned for that purpose, and a majority being present, may authorize the erection of warehouses by owners thereof, or may establish the same;” and such warehouses then and thus become public warehouses, subject to all the regulations prescribed by law in regard to the same, including such as relate to the appointment and duties of inspectors. But an owner of property cannot establish therein or thereon a public wai’ehouse, without being authorized by justices as aforesaid, even though he may be willing that inspectors should be appointed for it; and much less if he is unwilling that such appointment should be made. If, therefore, he establish “a private warehouse for receiving, storing, selling, weighing and delivering tobacco,” it does not thereby become a public warehouse for the inspection of tobacco. Such a warehouse can only be established in the mode prescribed by law; and until so prescribed, it camiot become a place for the inspection, of tobacco.
Ve are, therefore, of opinion, that the said notice and acts of the appellees were not given and done in fraud of the law, or of the rights of the appellant, but were bona fide and valid acts, and had the effect of closing the said warehouse as a public warehouse, &c.
Upon the whole, we think there is no error in the decree, and that it ought to be affirmed.